When you're ready. Thank you, Your Honor. Jamal Muhammad for the appellant Jose Ramos Martinez. Voluntary departure was plausible for Mr. Ramos as evidenced by Mr. Ramos's positive equities and as evidenced by similarly situated aliens also being granted voluntary departure. With respect to his positive equities they include his 11-year residence, his two United States citizen children, a entire family was living in the States including his United States citizen father, his lawful permanent resident mother, his four of his five siblings, ten nieces and nephews, and the fact that he was working and providing for his long-time girlfriend and his children as well as the fact that his sister had applied for status for him. Now with respect to... You know I sure wish you'd tell your client that he should quit being a bad person violating U.S. laws. I mean it's not very hard to just be a law-abiding citizen. He gets himself in trouble here by doing various things. Well he has he has most certainly gotten himself in trouble, Your Honor. As is evident by the record Mr. Ramos has a drug problem or had a drug problem but... The NDP should be willing quite willing to possess firearms. Well that he did he was found found with a departure was plausible. We have to look at other cases where individuals were granted voluntary departure and had similar equities and similar negative positive and negative equities. I think the most important case we have here is Gonzalez-Figueroa. In that case the individual in question had four assault convictions, four convictions of violence, one conviction for resisting arrest. He also had some positive equities including the fact that he lived in the United States. He also had some United States citizen family members including his sister and some nieces. In our case Mr. Ramos has more positive equities and less negative equities. Not only does Mr. Ramos have children here but he also excuse me not only does he have family here but he also has children here. He also has someone who applied for him to get status. Additionally he had not been convicted of drug possession. In terms of additional cases we also have Enri Pineda v. Castellanos. In that case that individual had 11 convictions for illegal entry, two convictions involving violence. He was involved in drunkenness, threatening people DUI's. Again when we look at at Mr. Ramos his conduct doesn't rise to that level. Although he had been convicted of drug possession, certainly he wasn't out in the community hurting people, beating people, threatening people, committing DUI's. I think I know the answer to this but I want to make sure I've got it clear. Was he represented in front of the IJ? No he was not. So when the IJ says I'm not going to give you a voluntary departure he's he's kind of at the mercy of the IJ. The IJ isn't saying would you like voluntary departure here's what it means. The IJ just says people like you don't get it. That that's absolutely correct your honor. In fact the the immigration judge told him specifically that I don't believe that people who were in the United States without documentation should violate the criminal laws and the drug laws in the United States and then explained that he wasn't going to give him voluntary departure. So Mr. Mr. Ramos did not even have the opportunity to set forth his positive equities. So as I understand the status of this case there's no argument from the United States that the first two elements of section 1326 D have been met and we've got a due process violation here. What we're looking at is whether or not there's prejudice. Absolutely. And then we look at the standard that was applied by the lower court in that connection and whether or not the judge applied the plausibility standard to me or applied an extreme hardship standard. Well that that is correct your honor. Obviously once we're at this at this stage it's a de novo review so the court this court can re-evaluate the issue. In this particular case the district court judge did apply the wrong standard. He applied the standard of extreme hardship standard. That's correct your honor. Right. As opposed to the plausibility. Absolutely your honor. But I believe that this court can reach the issue irrespective of of the decision made by the district court judge. In addition to the two cases that I mentioned there are additional cases where individuals with worse criminal history and similar or worse positive equities have received voluntary departure. I'd point the court to United States versus Alcazar Bucos. In that case the individual in question had two firearm convictions. He had gang ties and he also like Mr. Mr. Ramos had drug use. I think the only question in front of us is whether we reverse and remand to the district judge to apply the proper standard. Well I think that this court because this is a de novo review this court can reach reach the issue but most certainly if the court thinks it's more appropriate it can remand. But you know when. You mean that we should weigh the equities. That seems to me that that's if we agree with you that's what we ought to do. Well again because it's a de novo standard I believe that this court can reach reach that issue. But if the court believes that's more appropriate we obviously wouldn't object. The counsel's judge Gould if I could ask you a question. Absolutely your honor. Only in from my thinking on an issue raised by Judge Christensen on this prejudice standard. Does the district court I mean does the IJ have to advise him of a of an optional remedy for a possible remedy only if it's probable like more likely than not that the IJ would give that belief? Or does the IJ still have to tell him about the avenue for voluntary departure if it's a plausible plausible remedy in the abstract? We would argue well first we would argue that irrespective of whether it's plausible or probable that the immigration judge as a matter of due process has a has to inform Mr. had to have informed Mr. Ramos that in fact he could have applied for voluntary departure. Now when we speak to prejudice the issue is never probability. The issue is always going to be plausibility. Right? Probability is is more than 50 percent. It's more likely than not. The issue is really whether or not it's plausible. In this case due process isn't an issue because the government hasn't hasn't raised it. It's been waived. But to answer your question again to make sure that my answer is clear the immigration judge we would argue has an obligation under has an obligation to advise any alien Mr. Ramos or otherwise that the is eligible for voluntary departure even if it's not probable that the immigration judge would get it would give it. I see I have two minutes left I'd like to reserve the rest of my time for rebuttal. Let's hear from the government. Good morning may it please the court Colin McDonald for the United States. Mr. Ramos lived in the United States for 11 years. By my count about two years and ten months of those 11 years were spent in custody. So he had about oh about eight and a half years or so. Eight years and ten months to establish that he was a a candidate that would plausibly receive some sort of discretionary voluntary relief. In those eight years and ten months he committed 12 crimes. Four of which were felony convictions. Eight of which were misdemeanors. As your honor pointed out one of the felony convictions was a felon in possession conviction following a charge. In that case the officers discovered a firearm with. Now is your argument that his behavior is unmistakably worse materially worse from the behavior we've seen these other cases where there are strong ties to the United States and voluntary departure is granted? That's correct. I understand the strength of the bad record I got that but there's some other cases out there that suggest that people with records just as bad or maybe worse get voluntary departure. Let me address the two cases that my colleague brought up. Gonzalez Figueroa and then there's the Pineda case. Both of these were BIA cases. In Gonzalez Figueroa that defendant had more positive equities and less negative equities. And let me let me just review them. As for the positive equities that defendant had resided in the United States for 15 years. His mother was a lawful permanent resident. His sister and other family members were citizens. He had rehabilitated the the problem that led to his criminality by joining an AA group that was specifically found in Valdez, Novoa. He also had a pending visa petition that his mother had filed for him. He also helped his mother with rent and medical payments. The Valdez, Novoa case looked at Gonzalez and they said that Gonzalez Figueroa had compelling positive equities. Now as for Gonzalez Figueroa's negative equities he had four assault convictions which is certainly poor. Here there are no assaults. I mean we're not talking violence against other people. Is that right? That's correct. The critical distinction though your honor is that the longest prison sentence that he served to Gonzalez Figueroa was six months. We don't know the specifics of those assault convictions. The record is not clear. What we do know is that the longest prison sentence he served was six months. We also know that they're very long drug sentences in this country. Right. And what we also know is that Ramos... I'm not sure I'm going to attach a lot of significance to the length of the sentence or at least I'm going to pay attention to that rather than the nature of the crime that led to the sentence. Well I think with Mr. Ramos the importance is that it was his third drug conviction that finally got him to the 16-month sentence. He had done this twice previously and each successive conviction also violated his terms of probation from previous convictions. Clearly got a drug problem. This is a pattern that we see with people who have drug problems. That's correct and that is a that is a negative equity that has been specifically identified in the case Counsel? Yes, Your Honor. I don't really disagree with you about how negative that equity and maybe some others are but let me cut to the chase of what's on my mind so you can address it. As I understand it the idea stayed at the wrong standard. That is he was looking at not at plausibility but it's something else. Hardship or probability and and so just in terms of normal first principles for an appellate court if the decision-maker applied the wrong standard why shouldn't we why should we not just grant relief, vacate the whether he should have advised about this given the plausibility standards? Well, Your Honor, are you referring to the district judge applying the wrong standard or the immigration judge? The immigration judge. So what the immigration judge did and we we recognize the parallels between what the immigration judge did here and Melendez Castro where the immigration judge made it very well known that. Mr. McDonnell, I think I think Judge Gould was in fact referring to the to the district court judge. Did the district court judge apply the wrong standard, the right standard in determining prejudice? Yes, he did. Yes, I misspoke. No, you say he did? He did, Your Honor. He did what? Apply the wrong standard? I asked a bad question. Did he apply the correct standard in determining prejudice? The district court judge. I understand. I believe that he did. There was discussion of the Shushtari case and I think that's where the which involved extreme hardship. Now this court has already said in R.C. Hernandez that Shushtari when used as merely instructive in applying the plausibility standard is fine, that it's permitted and that's what the district court did. It said, well, you know, let's look at the family, the family ties to the United States and to determine whether that that factor sort of standing alone can can be sufficient to demonstrate plausibility. If you look at the record on between 111 and 113 or so, the court references the plausibility standard throughout. There was no, the court never stated that the standard I have to apply is related to the extreme hardship standard. The court specifically references the plausibility standard. It's between 111 and 113 and I my eyes are glazing over that specific reference to the plausibility standard. You want to be lines 21 through 23 at the bottom of 112. Right. Continuing over to page 113. So on 112, your honors, the the district court says that makes it pretty clear to me that he objectively cannot make a showing of plausibility of voluntary return in this case. I don't think that's the court referenced. The district judges got tangled his words. He doesn't mean voluntary return. Voluntary departure. Yeah, I think so. I mean, the record is clear that the district court knew what relief was being sought, that he applied the plausibility standard, that he looked at Shushtari as merely a instructive in applying the plausibility standard. This court in R.C. Hernandez specifically referenced the Shushtari case and said that in this context that looking at it and viewing it as instructive is permitted in this circumstance. The other case that my colleague brought up was Pineda Castellanos. In that case, it wasn't even an appeal by the government of the grant of voluntary departure. It was an appeal from the denial of a continuance to apply for adjustment of status by the petitioner. The BIA went out of its way in that case to say the following, given the respondent's criminal record, a grant of voluntary departure by the immigration judge was more than generous. The Valdez-Novoa case looked at Pineda and they said this, the board's intimation that Pineda represents the outer bound of voluntary departure relief does not lead us to believe that it is plausible that Valdez-Novoa would have received the same relief despite his more serious criminal record. So those were the two cases that my colleague brought before the court that would demonstrate plausibility, but Pineda has already been discussed by this court and has been shown to represent the outer bound of voluntary departure relief and Gonzalez-Figueroa, that defendant, had more positive equities and less negative equities. Counsel, at page 113 the court says, but with all respect to your arguments, I don't find that in this case the great actual or prospective injury from a deportation rather than voluntary return or any kind of extreme impact beyond that would be a common result of deportation. That looks to me like an extreme hardship standard to me. Two responses to that, your honor. The first is that, as mentioned, the Shustari case, that was, this comment comes after the court has looked at that. No, I'm trying to get into the mind of the lower court and try to figure out which standard that court is applying and just looking at the words of the judge, it looks to me like he's applying an extreme hardship standard as opposed to a plausibility standard. And if that's the case, because this is de novo review, this court has the entirety of the record before it and can rightfully determine that based on Ramos-Martinez's negative equities and positive equities that it was not plausible. So you both of us want to make the decision ourselves. You want us to weigh the equities, just like Mr. Muhammad. I think that's what the de novo review standard would require. You even want that if you're gonna lose? Well, your honor, I think that based on the de novo standard of review that's presently before the court, that the court can look at the previous case law. And Valdez-Novoa specifically said that if there was... My question was a tease. I think that last question might have been a joke. Let me ask you this, counsel. So I have in my mind that if it's de novo review, we can do everything ourself. But as a matter of practice, you know, I rarely want to undertake to review an issue that the district court hasn't specifically opined on. And if we're not sure the district court applied the right standard here, why wouldn't it be prudent to remand to the district court stating the standard that's to be applied? I want to commend Edge Gould for his deference to the district court, where we do fact-finding all the time. So I think that probably would be the appropriate thing to do here. Let the district court revisit this issue and weigh the equities. I see my time is out. If I might have one moment. So my response to that, I acknowledge that the court referenced extreme hardship. The record was based on the plausibility standard. If you go back... I've got a variation on this plausibility standard. The judge clearly says, I've got to decide whether it's plausible. But where the judge makes a mistake, in my view, is he does not state the proper standard for granting voluntary departure. So if he's trying to determine whether it's plausible that this man would have gotten voluntary departure, he then has to look at, well, what's the standard for that? In that one isolated passage, he does... Well, it's the only passage in which he speaks to it. I understand, Your Honor. So I think he got it wrong. Unless there are any further questions, I will submit. All right. Okay. Thank you. No questions. You want to snatch defeat from the Jaws of Victory? You've got two minutes to do it. Okay. I just want to make sure that the... I think the court hit it right on the head. The judge did apply the wrong standard. And you know that by looking at the patches on page 112. He says specifically, even without a criminal record, he cannot objectively make a plausible showing of voluntary return in this case. We know that if you have to apply both the positive or weigh both the positive and negative factors, then in fact, he should be looking at the criminal record and should... And whether or not he does not have a criminal record is absolutely relevant. On that, Your Honor, we would submit. Thank you very much. The case of United States versus Martinez submitted for decision. And we'll take our normal five-minute
judges: W. Fletcher, Gould, Christensen